

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**U.S. COURTHOUSE**
**402 E. STATE STREET**
**TRENTON, NEW JERSEY 08608**

**Hon. Michael B. Kaplan**                                                      **609-858-9360**
**Judge, United States Bankruptcy Court**

May 5, 2026

Re:     Kenneth Brewster
Case No. 25-21410 (MBK)
Objection to Proof of Claim No. 8

All Counsel of Record:

Presently before the Court is the Debtor's motion, styled as a motion to expunge claims (the "Motion"), objecting to Proof of Claim No. 8 filed by Sharon Brewster (the "Creditor" together with the Debtor, the "Parties"). The Debtor has renewed efforts, through his motion to reconsider, to obtain a determination that the Creditor's claim is not a domestic support obligation and is therefore not entitled to priority treatment under 11 U.S.C. § 507(a)(1). *See* ECF Nos. 16 and 26. The Court has considered the submissions of the Parties, including the objection, opposition, reply, and motion for reconsideration, the opposition thereto, and the supplemental opposition to the Motion, together with the record in this case. *See* ECF Nos. 16, 18, 20, 26, 27, and 38. For the reasons set forth below, the Court finds that the obligation at issue is not in the nature of support and is not entitled to priority status. Accordingly, the Motion is **GRANTED,** and the objection is **SUSTAINED**.

### I.      Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, and as further amended on June 6, 2025, referring all bankruptcy cases to the bankruptcy court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Venue is proper pursuant to 28 U.S.C. § 1408. The following constitutes the Court's findings of fact and conclusions of laws pursuant to Fed. R. Bankr. P. 7052.[1]

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact they are adopted as such.

1

## II.      Background and Procedural History

On October 27, 2025, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. *See* ECF No. 1. Thereafter, on November 18, 2025, the Creditor filed Proof of Claim No. 8 (the "Claim") in the amount of $24,200, asserting that the Claim constitutes a domestic support obligation entitled to priority status under 11 U.S.C. § 507(a)(1). *See* Claim No. 8. In support of the Claim, the Creditor attached a Notice of Custodial Parent Disbursement History dated November 12, 2025, a copy of the Final Judgment of Divorce dated July 2, 2018, and—significantly—a subsequent Chancery court order awarding a wage garnishment in favor of the Creditor dated October 26, 2018 and signed by state court Judge Deborah J. Venezia (the "Venezia Order"). *See* Claim No. 8.

The Claim arises from the Parties' divorce and a marital settlement agreement (the "MSA") incorporated into a Final Judgment of Divorce entered on July 2, 2018, in the Superior Court of New Jersey, Chancery Division, Family Part. *See "MSA"- Ex. A to Mot.*, ECF No. 16-2. The MSA provided, *inter alia*, for the allocation and repayment of certain joint debts, including a Small Business Administration loan (the "SBA Loan") in the approximate amount of $44,000, to be paid equally by the Parties. *Cert. in Support of Mot.* ¶¶ 4–6, ECF No. 16-1. The record further reflects that the Small Business Administration filed a separate unsecured proof of claim for the outstanding balance of that loan. *See* Claim No. 6. Significantly, the MSA expressly provides that "Kenneth and Sharon will not request a monthly stipend from either spouse via alimony, spousal support or otherwise." *See MSA*, ECF No. 16-2.

On December 12, 2025, the Debtor filed the instant Motion objecting to the Creditor's claim, asserting that the obligation represents the equitable distribution of marital debt rather than a domestic support obligation. *Cert. in Support of Mot.* ¶ 7, ECF No. 16-1. The Creditor opposed, relying on the Venezia Order, which referred to the obligation as "spousal support," as well as a Notice of Custodial Parent Disbursement History that labels the debt type as "alimony." *See Exs. A and B to Certification in Opposition to Motion* ("*Cert. in Opp'n*"), ECF No. 18; *see also* Claim No. 8 at 4, 9. The Creditor further asserted that, because the Debtor's Chapter 13 plan proposes to pay only a fraction of unsecured claims—and because she and the Debtor are jointly liable for the SBA Loan—she would remain liable for the remaining balance of the underlying debt notwithstanding having satisfied her portion. *Id.* at ¶ 5.

On January 27, 2026, the Court entered an Order denying the Debtor's objection. *See* ECF No. 23. At the hearing on the matter, the Court directed the Debtor to seek relief from the Venezia Order in state court. The Debtor thereafter moved for reconsideration before this Court. *See* ECF No. 26. The Parties briefed the issue, and the Court heard oral argument.  After taking the matter on reserve, on March 23, 2026, the Court entered an Opinion and separately an Order granting the motion to reconsider, and explaining that this Court would undertake a review of the Claim and the objection thereto, as presented in this Motion. *See* ECF Nos. 30 and 31, respectively. The Court directed the Parties to submit any supplemental pleadings relative to the instant Motion within 14 days of entry of the Order.  On April 13, 2026, the Creditor submitted a supplemental brief and certification in opposition to the Debtor's Motion. *See* ECF No. 38. The Debtor declined to supplement his position and, instead, relies on prior pleadings and the existing record.

The matter is now before the Court for determination.

### III.    Positions of the Parties

The Debtor contends that the obligation underlying the Creditor's claim arises solely from the Parties' equitable distribution of marital debt and is not in the nature of support. *See Mot*. at ¶¶ 6–10. The Debtor emphasizes that the MSA expressly disclaims any right to alimony or spousal support and instead allocates responsibility for repayment of the SBA Loan equally between the Parties. *Id*. Relying on *In re Gianakas*, 917 F.2d 759 (3d Cir. 1990), the Debtor argues that the record does not support a finding that the obligation constitutes a domestic support obligation. The Debtor urges this Court to look to the Parties' intent and the substance of the initial obligation under federal law, rather than the label assigned in subsequent state court proceedings. *See Debtor's Reply* 2-3, ECF No. 20.

The Creditor, in contrast, asserts that the Claim is properly characterized as a domestic support obligation entitled to priority treatment. *See Cert. in Opp'n* at ¶ 6. The Creditor relies on (i) a Notice of Custodial Parent Disbursement History, which appears to label the debt type as alimony; (ii) the Venezia Order, which refers to the obligation as "spousal support" and provides for enforcement through wage garnishment via the probation department; and (iii) a letter from the State of New Jersey. *See* Claim No. 8 at 9–10. The Creditor maintains that this Court should defer to the state court's characterization and enforce the obligation as support. *See Supp. Br*. 4, ECF No. 38-2. The Creditor points out that the Debtor's Amended Schedules—submitted November 12, 2025—still identify the debt as a domestic support obligation and argues that the Debtor should be bound by that characterization. *See id*. at 1 (citing *Amended Schedules E/F*, ECF No. 12).

The crux of the Creditor's supplemental argument, however, is that this Court is not the proper forum in which to litigate the issue.  This Court, in the Creditor's view, is ill-equipped to address a family law matter and should instead defer to the plain language of the Venezia Order and/or require Debtor to make a proper motion before the state court so a family court judge can address the issue. The Creditor further argues that *In re Gianakas* is factually distinguishable from the case at hand and, therefore, does not provide guidance. Nevertheless, the Creditor states that this Court correctly applied *In re Gianakas* in its initial ruling denying the Motion. Finally, the Creditor contends that federal law should not preempt state law under these circumstances.[2]

### IV.    Legal Standard

The issue before the Court is whether the obligation underlying Proof of Claim No. 8 is in the nature of a domestic support obligation within the meaning of § 101(14A), thereby entitling it to priority treatment under § 507(a)(1).

A "domestic support obligation" is defined by the Bankruptcy Code as a debt that accrues before, on, or after the order for relief, including interest, that is owed to or recoverable by a spouse, former spouse, or child of the debtor (or a governmental unit on their behalf), and that is "in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated." 11 U.S.C. § 101(14A). Claims qualifying as domestic support obligations are afforded first priority status. *See* 11 U.S.C. § 507(a)(1)(A) (granting priority to allowed unsecured claims for

---

[2] The Court also notes that the Creditor's supplemental pleadings raise additional objections to confirmation. *See Supp. Br*. 4, ECF No. 38-2 (alleging that Debtor is not applying all of his disposable income to the plan); *Supp. Cert*. ¶ 8, ECF No. 38-1 (expressing belief that Debtor recently received a large personal injury settlement and use proceeds to purchase a vehicle).  These allegations are best addressed in the context of the Confirmation Hearing and, as such, will not be addressed by way of this Opinion.

3

domestic support obligations owed to a spouse or former spouse as of the petition date). The Third Circuit has made clear that this determination is governed by federal bankruptcy law, not state law characterization. *In re Gianakas*, 917 F.2d 759, 762 (3d Cir. 1990) ("whether the obligation is in the nature of alimony, maintenance or support … is a question of federal, not state, law"). Thus, a bankruptcy court must "look beyond the label attached to an obligation . . . to examine its true nature." *Id.*

In determining whether an obligation is in the nature of alimony, maintenance, or support, courts examine the intent of the parties at the time of the agreement, as reflected by three principal indicators: (1) the language and substance of the agreement in the context of surrounding circumstances; (2) the parties' financial circumstances at the time; and (3) the function served by the obligation at the time of the divorce or settlement. *Id.* at 762–63. Notably, the inquiry is limited to the nature of the obligation at the time it was undertaken and does not extend to present need or subsequent developments. *Id.* at 763.

### V. Discussion

A. The issue is properly before this Court

As an initial matter, the Creditor's argument regarding federal preemption is misplaced. Simply put, this is not a matter of state law; therefore, there is no federal preemption. The issue presently before this Court is whether a financial obligation constitutes a "domestic support obligation"—a term that is defined by the Bankruptcy Code. This determination is, unquestionably, "one of federal bankruptcy law, not state law." *In re Wright*, No. 25-17258, 2025 WL 3030358, at *3 (Bankr. D.N.J. Oct. 29, 2025) (citing *In re Gianakas*, 917 F.2d at 762). Indeed, the Third Circuit clarified that "although the decree or settlement establishing the obligation almost invariably arises in the context of a state court proceeding, whether the obligation is in the nature of alimony, maintenance or support for the purposes of the Bankruptcy Code is a question of federal, not state, law." *In re Gianakas*, 917 F.2d at 762.

This Court recently observed that "while New Jersey courts have concurrent jurisdiction to determine whether an obligation constitutes alimony, maintenance, or support, for purposes of treatment in a bankruptcy proceeding, in doing so, courts must employ applicable federal bankruptcy law." *In re Koziol*, No. 25-18338, 2026 WL 867659, at *4 (Bankr. D.N.J. Mar. 30, 2026) (citing *Bisbing v. Bisbing*, 468 N.J. Super. 112, 123, 255 A.3d 1240, 1247 (App. Div. 2021)). As explained in this Court's Opinion granting reconsideration (ECF No. 30), the Court's initial decision on the Motion to Expunge sought to defer to the state court for a determination as to whether the debt in question constituted a domestic support obligation under federal bankruptcy law. However, upon learning that the state court judge who issued the Venezia Order retired, this Court ruled that a return to state court would not assist in the efficient resolution of the issue. Notably, "[a] newly assigned state court judge is in no better position to discern Judge Venezia's intent or to apply the applicable standards under federal bankruptcy law." *In re Brewster*, No. 25-21410 (MBK), 2026 WL 803584, at *4 (Bankr. D.N.J. Mar. 23, 2026). Thus, although this Court could have opted to abstain and compel the Parties to litigate this issue in state court, it chose not to do so. The Creditor may not relitigate this Court's Order regarding reconsideration by way of her opposition to the instant Motion.

4

B. Application of *In re Gianakas*[3]

Applying the *In re Gianakas* framework, the Court finds that each of the three factors weighs against a finding that the obligation constitutes support.

1. Language and Substance of the Agreement

The first—and most probative—factor is the language and substance of the MSA. Here, the MSA expressly provides that neither party would seek "alimony, spousal support or otherwise." *See MSA*, ECF No. 16-1. This is not a situation where the agreement is silent or ambiguous. To the contrary, the Parties affirmatively disclaimed any support obligation. The agreement allocates responsibility for repayment of marital liabilities, including the SBA Loan, requiring each party to pay an equal share. Under *In re Gianakas*, while labels are not dispositive, they remain highly relevant to discerning intent when considered in context. *In re Gianakas*, 917 F.2d at 762–63. Here, the explicit waiver of support, coupled with the structure of the agreement, strongly evidences an intent to create a property division obligation, not support.

2. Financial Circumstances of the Parties

The second *Gianakas* factor examines the parties' financial circumstances at the time of the agreement, including disparities in income, employment, and custodial responsibilities. *Id.* at 762–63. Here, the record is notably devoid of indicia typically associated with support obligation. There is no evidence that the Creditor lacked independent means of support, was economically dependent on the Debtor, or required payments to meet basic living expenses at the time of the divorce. Instead, the obligation arises from a shared liability incurred during the marriage, with both parties equally responsible for its repayment under the MSA. Unlike *In re Gianakas*, where the non-debtor spouse lacked income and could not maintain the marital residence without the debtor's payments, the obligation here is tied to a shared debt and not to the maintenance of housing or basic necessities. *Id.* at 764. This factor therefore weighs against characterization as support.

3. Function Served by the Obligation

The third factor examines the function served by the obligation at the time of the divorce. Obligations that "serve to maintain daily necessities such as food, housing and transportation" are

---

[3] In *In re Gianakas*, the Third Circuit clearly established that the party objecting to the dischargeability of a particular debt bears the burden. *See In re Gianakas*, 917 F.2d at 761 (citing FED. R. BANKR. P. 4005). However, this present issue did not arise in the context of a nondischareability action. Rather, it was the result of the Debtor's Motion to Expunge. The Creditor notes this in her pleadings and contends that it is the Debtor who bears the burden because he is the one seeking to expunge her claim. *Cert. in Opp'n to Mot. For Reconsideration* ¶ 13, ECF No. 27. Indeed, objections to validly-filed proofs of claim present a different burden-shifting structure. *See, e.g. Main v. BlockFi, Inc.*, No. CV 24-5592, 2025 WL 926515, at *4 (D.N.J. Mar. 27, 2025) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) and explaining that—after a claim is properly filed—the burden then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim; and once that burden is met, "[t]he claimant then bears the ultimate burden of establishing a valid claim by a preponderance of the evidence"). Ultimately, the Court need not explore this further. Whether analyzed as a dischargeability issue, or—as the Creditor suggests—as a claim objection, the result is the same. The record demonstrates that the debt in question is not a domestic support obligation. To the extent the burden rested with the Debtor, he has satisfied it by a preponderance of the evidence.

5

indicative of support. *Id.* at 763. Here, the obligation serves a different function. It requires repayment of a joint SBA Loan incurred during the marriage. *See Mot.* at ¶¶ 4–5. There is no evidence that payment of this obligation was necessary to ensure the Creditor's housing, sustenance, or basic living expenses. Rather, the obligation reflects an allocation of responsibility for a pre-existing marital liability. Accordingly, the function of the obligation is consistent with equitable distribution, not support.

B. Effect of the Venezia Order and Letter

The Creditor relies heavily on the post-divorce Venezia Order, which refers to the obligation as "spousal support" and authorizes wage garnishment through probation. While that characterization is entitled to consideration, it is not dispositive. Under *In re Gianakas*, this Court must look beyond labels to the substance of the obligation. The Venezia Order appears to have been entered in the context of enforcement and collection, rather than as a substantive determination of the nature of the obligation under federal law. Where, as here, the state court's characterization conflicts with the express terms of the MSA, the Court affords greater weight to the Parties' original agreement and intent.

The Court also reviewed the paperwork supporting Creditor's motion in state court, which led to the Venezia Order. Nowhere in those pleadings did the Creditor ask for support or ask the court to recharacterize the existing debt as support. The box for "alimony" was not checked, and the Creditor described the obligation as "the monthly requirement of the total bills agreed upon in the divorce document." *Ex. A to Cert. in Support of Mot.* 5, ECF No. 16-2. Thus, the record indicates that the Creditor sought a wage garnishment to ensure that the Debtor met his monthly bill obligations—not to create a support obligation.

The Creditor suggests that, through the Venezia Order, the state court may have intended for the initial MSA obligation to convert to spousal support. The Creditor posits that the state court—rather than the bankruptcy court—should determine whether the nature of the obligation was so converted. As discussed, this argument misses the mark. The question here is not—as framed by the Creditor—whether she became "entitled to spousal support under the specific circumstances of the Brewster divorce proceedings." *Supp. Br.* 2, ECF No. 38-1. Rather, the question is whether the obligations ordered by the MSA, and enforced through the Venezia Order, constitute "domestic support obligations" under federal law. Both the state court and the bankruptcy court are equipped to make such a determination. Under the circumstances here, however, this Court is in the better position. This Court's undertaking of this task does not disrespect the principal of comity, as the Creditor alleges.

Similarly, this Court's consideration of the nature of the debt—including an analysis that looks beyond the labels affixed to it in the state court orders—does not disregard the Venezia Order or otherwise vacate or alter Judge Venezia's ruling. To the contrary, this analysis is required under *In re Gianakas*. The Court is cognizant that the Venezia Order characterizes the garnishment as "support." However, "[m]any federal courts have held that the labels attached by state courts to the awards in a divorce case, such as alimony, maintenance, support or equitable distribution, while instructive, are not determinative as to priority or nondischargeable status." *In re Rogowski*, 462 B.R. 435, 442 n.13 (Bankr. E.D.N.Y. 2011) (collecting cases). Ordinarily, the analysis goes the opposite way; *i.e.* bankruptcy courts find that—although state courts did not label a debt as "support"—it is

6

nevertheless a "domestic support obligation" under the Code.  But the Third Circuit's instruction in *In re Gianakas* means that the inverse can also be true.  In other words, a debt is not a "domestic support obligation" under the Code merely because a state court labels it as "support." *See e.g. In re Duffy*, 331 B.R. 137, 150 (Bankr. S.D.N.Y. 2005), *aff'd*, 344 B.R. 237 (S.D.N.Y. 2006) (finding that obligation labeled "spousal maintenance" cannot be deemed alimony, maintenance, or support); *In re Chism*, 169 B.R. 163 (Bankr. W.D. Tenn. 1994) (finding that award of equity in marital home to wife in divorce proceeding was not in nature of support but was in nature of division of property and was dischargeable in husband's Chapter 7 case, despite divorce court's labeling of obligation as alimony in solido).

Finally, the Court considers a July 21, 2021 Order, also issued by Judge Venezia, which the Creditor attaches to her Supplemental Certification. *See Ex. B to Supp. Cert.* 8-9, ECF No. 38. The Creditor explains that—after the Venezia Order issued in 2018—the Debtor left his job to avoid the wage garnishment.  He was subsequently arrested for non-payment and the July 21, 2021 Order followed.  Paragraph 2 of that order directs the Debtor to "pay his share of the [SBA Loan] directly to the SBA[,]" and Paragraph 3 warns that, if he fails to comply, a bench warrant may issue for his arrest. *Id*.  While payments to entities other than an ex-spouse can nevertheless be support obligations, *see, e.g. In re Ventrone*, 648 B.R. 30, 44 (Bankr. E.D. Pa. 2023) (collecting cases), the Court finds the fact that Judge Venezia directed the Debtor to pay the SBA directly as a further indication that the Venezia Order did not intend to convert the financial obligation into a support obligation for the Creditor.  Indeed, years had passed without the Debtor's wages being garnished, which weighs against a finding that the Creditor needed these payments as support.  And the warnings to the Debtor contained in the July 2021 Order reinforce this Court's conclusion that Judge Venezia issued these orders as mechanisms for enforcement.  Nothing in the record hints at a ruling on the substantive nature of the debt or suggests an intention on the part of the state court, or the Creditor, to convert the repayment obligation into a support obligation.

To the extent the Creditor relies on the letter from the State of New Jersey annexed to the Certification in Opposition to the Motion for Reconsideration, the Court finds that this correspondence merely recites general principles regarding the nondischargeability and priority of domestic support obligations and does not constitute a determination as to the nature of the obligation at issue.

C.  Equitable Considerations

The Court also considers the impact of its ruling on the Parties.  The Creditor argues that the interests of justice and fairness compel a ruling in her favor.  Indeed, the Parties are jointly liable for the SBA Loan debt.  Therefore, anything left unpaid by the Debtor will become the Creditor's responsibility.  This result, while unfortunate, does not convert the debt into a domestic support obligation entitled to priority under the Code.  The Creditor voluntarily entered into the SBA Loan and the MSA.  She concedes that participating in a short sale may have been a "mistake." *Supp. Cert.* ¶ 7, ECF No. 38.  Nevertheless, she understood her actions, obligations, and the consequences of the Debtor's non-payment—an understanding which presumably prompted her to seek the wage garnishment.

Through bankruptcy, the Debtor is entitled to a discharge of certain debt.  As in any bankruptcy case, a consequence of a discharge may be that creditors go unpaid or do not receive full value on their claims.  It also may leave co-guarantors and other jointly-liable persons "holding the bag."  This

7

is an unfortunate reality of bankruptcy and is not—as the Creditor here posits—so patently unfair as to warrant this Court's intervention and compel interpretation of a debt as a domestic support obligation when the record suggests otherwise.

### V.      Conclusion

Upon consideration of the record and the factors set forth in *In re Gianakas*, the Court finds that the obligation underlying Proof of Claim No. 8 is not a domestic support obligation within the meaning of 11 U.S.C. § 101(14A). Rather, it constitutes an allocation of marital debt arising from the Parties' divorce. The Claim does not qualify as a domestic support obligation and is not entitled to priority status under 11 U.S.C. § 507(a)(1). The Debtor's Motion is, therefore, GRANTED, and the prior Order (ECF No. 23) denying the Motion is vacated. Because the SBA filed its own proof of claim, the Creditor's proof of claim will be expunged as duplicative.[4]  The Court will issue an Order consistent with this Letter Opinion.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[4] The Court also notes that the Debtor's initial obligation under the MSA totaled $400 per month, comprised of payments in the amounts of: $200 for the SBA Loan, $100 to the IRS, $50 to the NJ Division of Taxation, and $50 to GM Financial. The Venezia Order compelled garnishment in the amount of $400 per month—$200 bi-weekly. The Creditor's proof of claim is for the entire amount of the unpaid wage garnishment; however, her pleadings reference only the Debtor's obligation to pay his half of the SBA Loan.  The record is unclear whether the other obligations were repaid and/or whether the Creditor's claim is similarly duplicative of proofs of claim filed by the IRS and State of New Jersey. In any event, the Court's analysis and ruling remain the same.